# EXHIBIT B

Copy

IN THE EIGHTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

2015 JUN 11 PM 3:24

| | | |
|---|---|---|
| **PATRICIA LAUREN TUMMINELLO, individually and on behalf of the wrongful death beneficiaries of SPENCER TATE,** | ) | _____ D.C. |
| **Plaintiff,** | ) | **JURY DEMAND (12)** |
| **vs.** | ) | **Case No. 15C750** |
| **FATHER RYAN HIGH SCHOOL, INC.,** | ) | |
| **Defendant.** | ) | |

## AMENDED COMPLAINT

COMES now Plaintiff Patricia Lauren Tumminello and states her legally valid claims against the defendant for the wrongful death of her son, Spencer Tate, as follows:

### I. PARTIES

1. Plaintiff Patricia Lauren Tumminello ("Plaintiff" or "Mrs. Tumminello") is a citizen and resident of the state of Tennessee.

2. Defendant Father Ryan High School, Inc. ("Father Ryan"), is a Tennessee corporation with its principal place of business located in Nashville, Davidson County, Tennessee.

### II. PERTINENT FACTS

3. Mrs. Tumminello was the biological mother and custodial parent of Spencer Tate during all relevant times described herein.

4. Prior to his death, Spencer Tate was a freshman at Father Ryan during the 2013-14 school year (which is the relevant time period being complained of herein).

Copy

5. While Spencer Tate was a student at Father Ryan, it was *in loco parentis* with him.

6. Father Ryan had a written anti-bullying policy in a handbook that it produced and gave to its students and/or their families, which was in effect during the 2013-14 school year.

7. Upon information and belief, that handbook defined "bullying" in a number of different ways, which are set out as follows:

- **Physical bullying / harassment**

Physical bullying/harassment includes unwanted physical touching or contact (such as shoving, pushing, bumping hitting or slapping, tripping, poking, kicking, scratching) assault, deliberate impeding or blocking movement, or any intimidating interference with normal movement or work; it may also include damaging or destroying another's belongings or property; it also includes physical acts that are demeaning and humiliating but not bodily harmful.

- **Social / relational bullying / harassment**

This type of bullying/harassment is defined as the systemic diminishment of another's sense of self and/or damaging the social status, relationships, or reputation of another through

- ignoring, isolating, excluding, or shunning;
- participating in a pattern of behavior in which a student or a group of students picks on another student or treats him/her in such a way that makes him/her feel uncomfortable or alienated;
- spreading false and/or malicious rumors;
- gossiping or revealing personal information;
- embarrassing or publicly humiliating another.

- **Verbal bullying / harassment**

This type of bullying/harassment includes, but is not limited to, the following, whether in oral or written form:

- making derogatory comments, jokes, slurs, off-color language, or innuendoes;
- using belligerent or threatening words towards another student or employee;
- name-calling, sarcasm and put-downs; mocking, belittling, hurtful teasing, taunting.

Copy

*Father Ryan High School Student Handbook 2013-2014*, at 36-37.

8. Based upon the above, Father Ryan owed Spencer Tate a duty of reasonable care to ensure his safety and well-being while he was on its campus.

9. Despite Father Ryan's written anti-bullying policy that was in effect during the 2013-14 school year, Spencer Tate was pervasively and relentlessly abused and harassed by other students while on campus. The relentless abuse and harassment (as further described herein) occurred while he was in a class that was repeatedly left unsupervised by the teacher who should have been there but was not; Spencer was also targeted with belts in a practice known as "belt wars," which was apparently a common practice on Father Ryan's campus, where students would use belts as whips and hit other students with them to cause welts, *etc.*

10. Father Ryan knew or should have known of the relentless abuse and harassment of Spencer Tate by other students while he was on its campus but failed to take appropriate action to prevent said abuse and harassment. This was, among other things, because the students doing the abusing and harassment had a history of abuse and harassment at Father Ryan and at other schools controlled by the Catholic Diocese of Nashville.

11. During times while on Father Ryan's campus, upon information and belief, Spencer Tate was called "Faggot," "Fag," "Gay," and suffered other sexually oriented and derogatory verbal abuse. This form of abuse and harassment was so severe, pervasive, and objectively offensive that it deprived Spencer Tate of access to the educational opportunities or benefits provided by Father Ryan.

12. Such behavior as described herein should not be tolerated in a civilized society.

13. The abuse and harassment of Spencer Tate caused him to avoid school and school

Copy

events in an effort to avoid the relentless abuse and harassment.

14. Some of the abuse included other students at Father Ryan telling Spencer Tate to "go home and kill himself."

15. On February 25, 2014, Spencer Tate took his own life as a result of the relentless abuse and harassment he experienced while on Father Ryan's campus and under its "care."

16. Had Father Ryan complied with its own anti-bullying policy, Spencer Tate would not have been subjected to the relentless abuse and harassment on campus, and would not have committed suicide.

17. Father Ryan is responsible for the acts and omissions of its employees and agents as described herein under all applicable theories of vicarious liability.

18. The primary abusers and harassers of Spencer Tate on Father Ryan's campus, to the exclusion of no others, and upon information and belief, were Sage Warren; George Chesnut; and Josef Hobeika.

## III. FATHER RYAN'S WRONGFUL CONDUCT

### *A. Negligence*

19. Plaintiff adopts and incorporates Paragraphs 1-18 above as if stated verbatim in this subsection.

20. Father Ryan owed Spencer Tate a duty of due care to ensure he was safe and free from abuse and harassment while he was on its campus.

21. Father Ryan failed to abide by and follow its own anti-bullying policy that was in effect as described herein as it related to Spencer Tate.

Copy

22. Father Ryan's failure to abide by and follow said policies, which is by definition "negligence," was the cause in fact and legal cause of Spencer Tate's untimely and wrongful death.

23. As such, Father Ryan is liable to Mrs. Tumminello for the damages as set out below.

### *B. Reckless Conduct*

24. Plaintiff adopts and incorporates Paragraphs 1-18 above as if stated verbatim in this subsection.

25. Father Ryan owed Spencer Tate a duty of due care to ensure he was safe and free from abuse and harassment while he was on its campus.

26. Father Ryan failed to abide by and follow its own anti-bullying policy that was in effect as described herein as it related to Spencer Tate.

27. Father Ryan's failure to abide by and follow said policies, which it was aware of, but consciously disregarded, was a substantial and unjustifiable risk that could lead to Spencer Tate's possible suicide and that disregard constituted a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances, which means Father Ryan acted in a "reckless" manner as it pertained to Spencer Tate as described herein.

28. Father Ryan's reckless conduct was the cause in fact and legal cause of Spencer Tate's untimely and wrongful death.

29. As such, Father Ryan is liable to Mrs. Tumminello for the damages as set out below.

Copy

*C. Deliberate Indifference*

30. Plaintiff adopts and incorporates Paragraphs 1-18 above as if stated verbatim in this subsection.

31. Upon information and belief, Father Ryan received federal funds on or before the 2013-14 school year and is therefore subject to Title IX causes of action.

32. Father Ryan is liable to Mrs. Tumminello under Title IX of the Educational Amendments of the Civil Rights Act, which can be found at 20 U.S.C. sec. 1681 and 42 U.S.C. sec. 1983, because it had actual knowledge of the abuse and harassment described herein and was deliberately indifferent to said abuse and harassment.

33. As such, Father Ryan is liable to Mrs. Tumminello for the damages under Title IX.

**IV. DAMAGES CAUSED BY FATHER RYAN'S WRONGFUL CONDUCT**

WHEREFORE, Plaintiff prays for the following remedies or relief:

1. For a judgment against Father Ryan by way of a jury's verdict for compensatory damages in the amount of $20,000,000.00;

2. For a judgment against Father Ryan by way of a jury's verdict for punitive damages damages based upon reckless conduct in the amount of $20,000,000.00;

3. For a judgment against Father Ryan by way of a jury's verdict for based upon all available Title IX remedies, which are not capped under federal law, in the amount of $20,000,000.00; and

4. All general relief Plaintiff is entitled to receive in this case (including being allowed to amend this pleading to conform to the evidence presented at trial).

Copy

Respectfully submitted,

H. Anthony Duncan #20056
TONY DUNCAN LAW
Truxton Trust Bldg.
4525 Harding Pike, Ste. 200
Nashville, TN 37205
Telephone: (615) 620-4471
Facsimile: (615) 620-4521
E-mail: tonydlaw@gmail.com

**ATTORNEY FOR THE PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true and exact copy of the foregoing was served via hand-delivery upon the following:

L. Gino Marchetti, Jr., Esq.
Matt. C. Pietsch, Esq.
Miller K. Hunt, Esq.
2908 Poston Ave.
Nashville, TN 37203

this 11th day of Jun., 2015.

H. Anthony Duncan