IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICIA LAUREN TUMMINELLO, Individually and on behalf of the wrongful death beneficiaries of Spencer Tate, <br><br>Plaintiff,<br><br>v.<br><br>FATHER RYAN HIGH SCHOOL, INC.,<br><br>Defendant. | No. 3:15-cv-00684<br><br>Judge Nixon<br>Magistrate Judge Bryant<br>JURY DEMAND |

## ORDER

Patricia Lauren Tumminello sued Father Ryan High School ("FRHS") after her son committed suicide in February 2014. (Doc. No. 1-2.) Tumminello argues FRHS knew or should have known her son faced relentless abuse and harassment by other students, but did nothing to address the harassment in violation of Title IX of the Education Amendments Act of 1972, and that FRHS' negligent failure to abide by its own anti-bullying policies violated Tennessee law and led to her son's death. (*Id.* ¶¶ 30–32, 19–29.) Pending before the Court is FRHS' Motion to Dismiss, in which the school contends Tumminello failed to allege sufficient facts to support her claims. (Doc. No. 3.) For the reasons stated below, the Motion is **GRANTED**.

I. BACKGROUND

A. *Facts*[1]

Prior to his death, Spencer Tate was a freshman at FRHS in Nashville, Tennessee, during the 2013–2014 school year. Tate's mother, Patricia Lauren Tumminello, alleges Tate was subjected to relentless abuse and harassment by other FRHS students while on campus. For

---
[1] All facts are drawn from Plaintiff Patricia Lauren Tumminello's Amended Complaint (Doc. No. 1-2).

1

instance, Tate was targeted with belts in a practice known as "belt wars" in which students would use belts as whips to hit other students in order to cause welts. Tate was also called "Faggot," "Fag," "Gay," and "suffered other sexually oriented and derogatory verbal abuse" that was so "severe, pervasive, and objectively offensive" that it led Tate to avoid school and school activities. Some students told Tate to "go home and kill himself."

FRHS has a written anti-bullying policy that prohibits physical, relational, and verbal bullying and harassment. According to Tumminello, FRHS "knew or should have known of the relentless abuse and harassment of Spencer Tate by other students" but failed to take action to prevent this harassment in violation of the school's anti-bullying policy.

Tate committed suicide on February 25, 2014, allegedly as a result of the relentless abuse and harassment he suffered as a student at FRHS.

### B. Procedural Background

Tumminello filed the operative Amended Complaint in the Eighth Circuit Court for Davidson County, Tennessee, on June 11, 2015, alleging FRHS's negligent failure to abide by its anti-bullying policy caused Tate's suicide, and that FRHS was deliberately indifferent to the abuse and harassment Tate suffered in violation of Title IX of the Education Amendments Act of 1972 ("Title IX"). (Doc. No. 1-2 ¶¶ 19–23, 30–33.) FRHS removed the case to federal court on June 19, 2015. (Doc. No. 1.) FRHS filed the instant Motion to Dismiss and a Memorandum in Support the same day, contending Tumminello failed to state a claim under Title IX because the complaint includes no allegation that Tate was harassed because of his sex, Tumminello failed to state a claim for negligence because the complaint does not allege the facts necessary to establish FRHS's actions were the proximate cause of Tate's suicide, and Tumminello failed to show she

2

is entitled to punitive damages because she has not alleged reckless conduct.[2] (Doc. No. 4 at 4–7, 9–16.) Tumminello filed her Response on July 24, 2015 (Doc. No. 10), and FRHS filed its Reply on August 5, 2015 (Doc. No. 16).

## II. STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations and quotation marks omitted).

On a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys*, 684 F.3d at 608. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to support a claim. *Iqbal*, 556 U.S. at 678.

---

[2] FRHS also argued Tumminello failed to state a claim under 42 U.S.C. § 1983 (Doc. No. 4 at 7–9), but Tumminello contends she "did not, nor does she at this time, assert a claim under Section 1983" (Doc. No. 10 at 15 n.30).

3

## III. ANALYSIS

   *A. Title IX*

Title IX provides in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (2012). To establish a prima facie case of student-on-student sexual harassment under Title IX, a plaintiff must show the following: (1) the plaintiff was subjected to harassment based on sex; (2) the sexual harassment was "so severe, pervasive, and objectively offensive that it [could] be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school"; (3) the funding recipient had "actual knowledge" of the sexual harassment; and (4) the funding recipient was "deliberately indifferent to [the] sexual harassment." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650–51 (1999) (examining *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998) to determine when "gender-oriented conduct rises to the level of actionable 'harassment'" under Title IX); *see also Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 867 (8th Cir. 2011); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 65–66 (1st Cir. 2002) ("Discrimination on the basis of sex is the sine qua non of a Title IX sexual harassment case, and a failure to plead that element is fatal."); *cf. Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013), reh'g denied (Apr. 12, 2013) (holding the same legal framework applies to Title VII and Title IX claims). FRHS argues Tumminello's Title IX claim must be dismissed because she does not allege her son's harassment was based on sex. (Doc. No. 4 at 4–7.)

Plaintiffs alleging same-sex sexual harassment typically demonstrate harassment based on sex in one of four ways: "(1) where the harasser making sexual advances is acting out of

4

sexual desire; (2) where the harasser is motivated by general hostility to the presence of men . . .; (3) where the plaintiff offers 'direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex [environment]';" and (4) where the harasser is motivated by the plaintiff's gender non-conforming behavior or appearance. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763–65 (6th Cir. 2006) (quoting *Oncale*, 523 U.S. at 80–81). "[S]exual orientation is not a protected classification" under Title VII or Title IX, "[t]hus, harassment or discrimination based upon a person's sexual orientation cannot form the basis of a cognizable claim." *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 471 (6th Cir. 2012).

"The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement," thus plaintiffs need not plead every element of a prima facie case of discrimination in the complaint. *Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002)). However, to survive a motion to dismiss, Tumminello must do more than allege facts consistent with FRHS' liability. To state a plausible claim for relief, she "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that FRHS discriminated against Tate based on his sex. *See Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678–79).

Some courts have found that allegations of harassment because of perceived sexual orientation, without more, are sufficient to infer on a motion to dismiss that the harassment was based on sex. For instance, in *Walsh v. Tehachapi Unified School District*, the court found the plaintiff's allegation that a teacher called him "fruity" was sufficient to show the harassment was motivated by the plaintiff's failure to adhere to gender stereotypes, and therefore, based on sex. 827 F. Supp. 2d 1107, 1114–15 (E.D. Cal. 2011) (dismissing plaintiff's Title IX claim because

5

the comment, without more, did not constitute severe or pervasive harassment). *See also Ray v. Antioch Unified Sch. Dist.*, 107 F. Supp. 2d 1165, 1170–71 (N.D. Cal. 2000) (denying pre-*Iqbal/Twombly* motion to dismiss and finding "no material difference between the instance in which a female student is subject to unwelcome sexual comments and advances due to her harasser's perception that she is a sexual object, and the instance in which a male student is insulted and abused due to his harasser's perception that he is a homosexual, and therefor[e] a subject of prey."); Hannah Bolt, *The Anoka-Hennepin Lawsuit: How Anti-Gay Bullying Was Sex-Based and "Neutrality" Created A Hostile Environment*, 26 Harv. Hum. Rts. J. 265, 275 (2013) (arguing that "[r]epudiating femininity and homosexuality through bullying reinforces hegemonic masculinity").

The Sixth Circuit, however, has explicitly rejected this theory. In *Vickers*, the plaintiff alleged he was called "a 'fag,' 'gay,' and other derogatory names" and suffered various other humiliations because of his perceived sexual orientation. 453 F.3d at 759. The plaintiff contended these allegations were sufficient to state a claim for sex discrimination because, "in the eyes of his co-workers, his sexual practices, whether real or perceived, did not conform to the traditionally masculine role." *Id.* at 763. The plaintiff's claim failed, however, because he did not argue that "his appearance or mannerisms on the job were perceived as gender non-conforming in some way and provided the basis for the harassment he experienced. Rather, the harassment of which Vickers complains is more properly viewed as harassment based on Vickers' perceived homosexuality, rather than based on gender non-conformity." *Id.* In affirming the district court's order dismissing the case, the Sixth Circuit noted that

> recognition of Vickers' claim would have the effect of *de facto* amending Title VII to encompass sexual orientation as a prohibited basis for discrimination. In all likelihood, any discrimination based on sexual orientation would be actionable

> under a sex stereotyping theory if this claim is allowed to stand, as all homosexuals, by definition, fail to conform to traditional gender norms in their sexual practices.

*Id.* at 764. Accordingly, in order to cross the bridge from possibility to plausibility, a plaintiff must allege the harassment was motivated by something more than sexual orientation.

Tumminello alleges her son was "pervasively and relentlessly abused and harassed by other students while on campus." (Doc. No. 1-2 ¶ 9.) He was "targeted with belts in a practice known as 'belt wars' . . . where students would use belts as whips and hit other students with them." (*Id.*) Furthermore, "Tate was called 'Faggot,' 'Fag,' 'Gay,' and suffered other sexually oriented and derogatory verbal abuse." (*Id.* ¶ 11.) Other students told him "to 'go home and kill himself.'" (*Id.* ¶ 14.) Of these, only the allegation of sexually-oriented verbal abuse indicates Tate may have been sexually harassed. Under *Vickers*, the most that can be inferred from that allegation is that other students harassed Tate based on his perceived sexual orientation, not based on his sex.

Tumminello argues that according to a "Dear Colleague" letter issued by the United States Department of Education Office for Civil Rights ("OCR"), "one student calling another 'sexually charged names' constitutes sexual harassment under Title IX," thus she has stated a claim. (Doc. No. 10 at 19.) However, the OCR letter is consistent with the Sixth Circuit's, and this Court's, finding that Tumminello did not state a claim under Title IX because she did not allege Tate's harassment was based on sex. The OCR letter addresses the hypothetical example of a gay student who was "physically assaulted, threatened, and ridiculed because he did not conform to stereotypical notions of how teenage boys are expected to act and appear (e.g., effeminate mannerisms, nontraditional choice of extracurricular activities, apparel, and personal grooming choices)" and explains:

7

> it can be sex discrimination if students are harassed either for exhibiting what is perceived as a *stereotypical characteristic for their sex*, or for *failing to conform to stereotypical notions of masculinity and femininity*. Title IX also prohibits sexual harassment and gender-based harassment of all students, regardless of the actual or perceived sexual orientation or gender identity of the harasser or target. Although Title IX does not prohibit discrimination based solely on sexual orientation, Title IX does protect all students, including lesbian, gay, bisexual, and transgender (LGBT) students, from sex discrimination. When students are subjected to harassment on the basis of their LGBT status, they may also, as this example illustrates, be subjected to forms of sex discrimination prohibited under Title IX.

U.S. Dep't of Educ. Office of Civil Rights, Dear Colleague Letter: Harassment and Bullying 7–8 (Oct. 26, 2010), *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf (emphasis added). The OCR letter recognizes that discrimination based on sexual orientation is not prohibited by Title IX, but students subject to anti-gay harassment may be discriminated against based on sex because of gender non-conforming behaviors or appearances.

The cases Tumminello cites are likewise distinguishable. For instance, in *Montgomery v. Independent School District Number 709*, the plaintiff alleged "he did not meet [his harassers'] stereotyped expectations of masculinity . . . He specifically allege[d] that some of the students called him 'Jessica,' a girl's name, indicating a belief that he exhibited feminine characteristics." 109 F. Supp. 2d 1081, 1090 (D. Minn. 2000). The court in *Theno v. Tonganoxie Unified School District Number 464* denied the defendant's motion for summary judgment because "a rational trier of fact could infer that plaintiff was harassed because he failed to satisfy his peers' stereotyped expectations for his gender because the primary objective of plaintiff's harassers appears to have been to disparage his perceived lack of masculinity." 377 F. Supp. 2d 952, 965 (D. Kan. 2005). The plaintiff presented evidence that the most egregious harassment began after his harassers started a rumor that the plaintiff was caught masturbating in the bathroom; "[t]he fact that plaintiff's peers made crude drawings and teased him because he was perceived to be a

8

masturbator, when combined with arguably related crude name-calling, reflects that plaintiff's harassers believed that he did not conform to male stereotypes by *not* engaging in such behavior at school, i.e., that he did not act as a man should act." *Id.* The *Theno* court specifically noted, however, "name-calling, standing alone, probably would not be sufficient to withstand summary judgment." *Id.* The *Theno* and *Montgomery* plaintiffs specifically alleged, or presented evidence indicating, they were harassed because of gender non-conforming behavior.

Tumminello did not allege Tate was harassed because of gender non-conforming behavior or appearance, nor did she allege Tate's harassment fell into any of the other categories described in *Oncale*. Without more, the Court cannot infer that Tate was harassed based on his sex. Accordingly, FRHS' Motion (Doc. No. 3) on this ground is **GRANTED**.

 *B. Negligence*

To establish a defendant's negligence, a plaintiff must show the following: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Moore v. Houston Cty. Bd. of Educ.*, 358 S.W.3d 612, 619 (Tenn. Ct. App. 2011) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). A defendant's breach of duty is the proximate cause of the plaintiff's injury if:

> (1) the tortfeasor's conduct [was] a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Id.* "If the injury giving rise to the plaintiff's cause of action was not reasonably foreseeable, then there is no proximate cause and no liability for negligence." *Id.* FRHS contends Tumminello

9

failed to allege Tate's suicide was reasonably foreseeable, thus her negligence claim must be dismissed. (Doc. No. 4 at 11.)

"Tennessee courts have long held that 'the voluntary and free act of the deceased in taking [his] own life . . . [is] an abnormal thing, which supersedes defendant's liability.' *Lancaster v. Montesi*, 216 Tenn. 50, 390 S.W.2d 217, 222 (1965). Thus, suicide is usually an 'independent intervening cause [that] breaks the chain of legal causation between the original negligent actor's conduct and the eventual injury.' *Rains v. Bend of the River*, 124 S.W.3d 580, 593 (Tenn. Ct. App. 2003)." *Smith v. Pfizer Inc.*, 688 F. Supp. 2d 735, 747 (M.D. Tenn. 2010). Tennessee recognizes three exceptions to this rule:

> (1) circumstances in which the defendant's negligence causes delirium or insanity that results in self-destructive acts; (2) custodial settings in which the custodian knew or had reason to know that the inmate or patient might engage in self-destructive acts; and (3) special relationships, such as a physician-patient relationship, when the caregiver knows or has reason to know that the patient might engage in self-destructive acts.

*Rains*, 124 S.W.3d at 593–94 (internal citations omitted). "[F]oreseeability is the touchstone of the independent intervening cause inquiry, because 'no person is expected to protect against harms from events that he or she cannot reasonably anticipate or foresee or which are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.'" *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 736 (6th Cir. 2007).

Tumminello alleges "[t]he abuse and harassment of Spencer Tate caused him to avoid school and school events" (Doc. No. 1-2 ¶ 13), that Tate eventually "took his own life as a result of the relentless abuse and harassment" (*id.* ¶ 15), and that FRHS' "failure to abide by and follow [its anti-bullying] policies . . . was the cause in fact and legal cause of Spencer Tate's untimely and wrongful death" (*id.* ¶ 22). The complaint includes the legal conclusion that FRHS'

10

negligence was the legal cause of Tate's suicide, but legal conclusions do not suffice to support a claim. *Iqbal*, 556 U.S. at 678. Tumminello alleges no facts from which this Court can draw a reasonable inference that FRHS' alleged negligence caused delirium or insanity, or that FRHS knew or had reason to know Tate might engage in self-destructive acts.

Tumminello's arguments to the contrary are unavailing. Tumminello cites *Smith* for the proposition that this case should not be dismissed because "it is at least a *question of fact* whether Spencer's suicide is an independent intervening cause." (Doc. No. 10 at 14.) However, as FRHS points out, the issue in *Smith* was a drug company's negligent or intentional failure to warn doctors that its drug increased the risk of suicide; the court found "an increased risk of suicide is the very reason that the defendants' conduct was allegedly negligent" and therefore that the plaintiff's suicide was potentially foreseeable. *Smith*, 688 F. Supp. 2d at 749. Unlike in *Smith*, Tumminello made no allegations relating to the foreseeability of Tate's suicide.

In opposition to FRHS' Motion, Tumminello argues Tate's suicide was foreseeable because a fact sheet distributed with OCR's Dear Colleague letter indicated that "possible effects of student-on-student harassment" include "[s]elf-harm and suicidal thinking." (Doc. No. 10 at 14, 17 (citing U.S. Dep't of Educ. Office of Civil Rights, Dear Colleague Letter Harassment and Bullying Background, Summary, and Fast Facts 1 (Oct. 26, 2010), *available at* http://www2.ed.gov/about/offices/list/ocr/docs/dcl-factsheet-201010.pdf. ) However, the fact that suicidal thinking is a potential consequence of bullying does not establish that Tate's suicide was reasonably foreseeable because the complaint does not allege FRHS was on notice of Tate's state of mind. *See Moore*, 358 S.W.3d at 619–21; *Rains*, 124 S.W.3d at 594–95.

Absent allegations from which the Court could draw a reasonable inference that Tate's suicide was foreseeable, Tumminello has not stated a plausible negligence claim. FRHS' Motion (Doc. No. 3) on this ground is **GRANTED**.

### C. *Punitive Damages*

Tumminello seeks punitive damages stemming from FRHS' allegedly reckless conduct. "A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). As explained above, Tumminello has not alleged FRHS knew or had reason to know Tate might engage in self-destructive acts. Accordingly, she has not alleged FRHS was aware of, but consciously disregarded, a substantial and unjustifiable risk. FRHS' Motion (Doc. No. 3) on this ground is **GRANTED**.

### D. *Leave to Amend*

Tumminello moves for leave to amend her Amended Complaint. (Doc. No. 10 at 21.) Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." However, a motion for leave to amend must comply with Rule 7 and "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B); *see Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014). "[T]he court must have before it the substance of the proposed amendment" to determine whether "justice so requires." *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 906 (6th Cir. 2002). "A 'request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" *Kuyat*, 747 F.3d at 444 (quoting *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010)).

12

Tumminello's motion consists of a single sentence in her Response brief and does not set forth any proposed amendment or argument as to whether an amendment would meet the legal standard governing Rule 15(a)(2). (Doc. No. 10 at 21.) The motion for leave to amend is **DENIED**.

**IV. CONCLUSION**

For the reasons stated above, FRHS' Motion (Doc. No. 3) is **GRANTED**. The Clerk of the Court is directed to **CLOSE** the case.

It is so ORDERED.

Entered this the 30th day of November, 2015.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT